# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL S. LEFLAR** | : CIVIL ACTION |
| v. | : |
| | : NO. 16-6567 |
| **WARDEN, MONTGOMERY** | : |
| **CORRECTIONAL FACILITY**, *et al* | : |

## ORDER-MEMORANDUM

**AND NOW**, this 16th day of November 2017, upon considering the served Defendants' Motion to partially dismiss (ECF Doc. No. 55) the *pro se* Second Amended Complaint and following today's oral argument, it is **ORDERED** Defendants' Motion (ECF Doc. No. 55) is **GRANTED** in part and **DENIED** in part:

1. We grant Defendants' Motion and **dismiss** Plaintiff's claims for punitive damages under 42 U.S.C. §1983 against Montgomery County and the Montgomery County Correctional Facility **with prejudice;**

2. We grant Defendants' Motion and **dismiss** Plaintiff's claims against Major Carbo and Lt. Apple without prejudice to be renewed consistent with this Order in a Third Amended Complaint (now filed with the benefit of counsel) no later than **December 5, 2017;** and,

3. We deny Defendants' Motion as to Plaintiff's claims against Officers Davis and Jones and Lt. Riley.

## *Analysis*

In 2014, a robber shot Daniel S. Leflar in the back of the leg shattering his femur.[1] Surgeons at Temple University Hospital implanted a metal plate held by eight screws into Mr.

---

[1] ECF Doc. No. 42, ¶ 32.

Leflar's leg to reinforce his femur.² To manage Mr. Leflar's post-surgery pain, the Hospital prescribed Mr. Leflar pain killers including Morphine, Dilaudid, and Percocet.³ After surgery, the Hospital released Mr. Leflar to the custody of the Bucks County Sheriff's Office responsive to an open warrant on Mr. Leflar.⁴ The Hospital provided Bucks Sheriff with Mr. Leflar's discharge instructions including follow up appointment dates and prescriptions for physical therapy and medications.⁵

Bucks Sheriff delivered Mr. Leflar and the Hospital's discharge instructions to Bucks County Correctional Facility.⁶ While at Bucks Facility, an unnamed Bucks Facility employee discontinued Mr. Leflar's pain medication.⁷ Mr. Leflar submitted numerous "sick call slips" and grievances at Bucks Facility claiming he did not receive the medical treatment outlined in Hospital's discharge instructions.⁸ While at Bucks Facility for nearly three months, Mr. Leflar saw a doctor on only one occasion.⁹ Doctor Brian Hartzell met with Mr. Leflar and told Mr.

---

² ECF Doc. No. 42, ¶ 33.

³ ECF Doc. No. 42, ¶ 34.

⁴ ECF Doc. No. 42, ¶ 35.

⁵ ECF Doc. No. 42, ¶ 36.

⁶ ECF Doc. No. 42, ¶ 35-37.

⁷ ECF Doc. No. 42, ¶ 43.

⁸ ECF Doc. No. 42, ¶ 44-57.

⁹ ECF Doc. No. 42, ¶ 53.

Leflar he wanted to meet three times a week to treat his injured leg.[10] Despite Mr. Leflar's numerous requests, Mr. Leflar never met again with Dr. Hartzell while at Bucks Facility.[11]

For reasons not provided, Bucks Sheriff transferred Mr. Leflar, along with his medical files, to the custody of Montgomery County Correctional Facility.[12] Upon arrival at Montgomery Facility, Defendant J. Doe medically screened Mr. Leflar.[13] J. Doe ordered Mr. Leflar receive crutches, instead of a wheelchair Mr. Leflar enjoyed at Bucks Facility.[14] While at Montgomery Facility, Mr. Leflar submitted numerous "sick call requests" and grievances claiming he experienced immense pain and did not receive medical treatment outlined in Hospital's discharge instructions.[15] Montgomery Facility did not respond to Mr. Leflar's complaints until about two weeks after arriving at Montgomery Facility when Nurse Alexis Koenig met with Mr. Leflar.[16]

The following day, Mr. Leflar verbally informed Correctional Officer Jones he experienced a great deal of pain in his leg.[17] Officer Jones ignored Mr. Leflar's complaint.[18] The next day, Mr. Leflar verbally informed Correctional Officer Davis he experienced immense

---

[10] ECF Doc. No. 42, ¶ 53.

[11] ECF Doc. No. 42, ¶ 54-57.

[12] ECF Doc. No. 42, ¶ 57.

[13] ECF Doc. No. 42, ¶ 58.

[14] ECF Doc. No. 42, ¶ 59.

[15] ECF Doc. No. 42, ¶ 61-88.

[16] ECF Doc. No. 42, ¶ 65.

[17] ECF Doc. No. 42, ¶ 66.

[18] *Id.*

pain and needed medical treatment.[19] Officer Davis ignored Mr. Leflar's complaint.[20] Around this time, Mr. Leflar finally met with a medical doctor.[21] Doctor Margaret Carrillo met with Mr. Leflar and explained his leg remained seriously injured.[22]

Over the next month, Mr. Leflar submitted daily sick call slips complaining about his immense pain and lack of medical treatment.[23] Montgomery Facility did not respond until the end of the month when Nurse D. McFadden visited Mr. Leflar.[24] For the next month-and-a-half, Mr. Leflar submitted sick call slips or grievances almost daily.[25] Montgomery Facility did not respond to these complaints.[26] Mr. Leflar verbally asked Lieutenant Riley for a grievance because he did not receive necessary medical treatment.[27] Lieutenant Riley claimed he "was busy" and would contact medical personnel later.[28]

Six months passed since Mr. Leflar's surgery and according to the instructions Mr. Leflar received post-surgery, the time arrived to remove the plate and screws from Mr. Leflar's leg.[29]

---

[19] ECF Doc. No. 42, ¶ 67.

[20] *Id.*

[21] ECF Doc. No. 42, ¶ 68.

[22] *Id.*

[23] ECF Doc. No. 42, ¶ 70.

[24] *Id.*

[25] ECF Doc. No. 42, ¶ 72-78.

[26] *Id.*

[27] ECF Doc. No. 42, ¶ 79.

[28] *Id.*

[29] ECF Doc. No. 42, ¶ 80.

Mr. Leflar met with Nurse Koenig and explained he needed to visit a surgeon to examine his leg.[30] A month-and-a-half passed, and despite daily requests to see a surgeon, Montgomery Facility did not afford Mr. Leflar such an opportunity.[31] Montgomery Facility did not respond to Mr. Leflar until nearly two months after his visit with Nurse Koenig and scheduled him a visit with a medical provider.[32] While in Montgomery Facility's custody, Mr. Leflar experienced immense pain daily.

Two months later Montgomery Facility transferred Mr. Leflar to SCI-Graterford.[33] After a medical screening at Graterford, Graterford provided Mr. Leflar with a knee brace, pain medication, x-rays, and a visit with a physical therapist and medical doctor.[34] Graterford discovered the screws in Mr. Leflar's legs were loosening and creating pressure and damage to his nerves.[35] Graterford also discovered Mr. Leflar's bone grew in an awkward manner hinging his knee cap because of the extended period the metal plate remained in his leg.[36] Graterford

---

[30] *Id.*

[31] ECF Doc. No. 42, ¶ 80-82.

[32] ECF Doc. No. 42, ¶ 83.

[33] ECF Doc. No. 42, ¶ 90.

[34] *Id.*

[35] ECF Doc. No. 42, ¶ 93.

[36] ECF Doc. No. 42, ¶ 92.

5

sent Mr. Leflar to Hahnemann Hospital to be evaluated by an orthopedic surgeon.[37] An orthopedic surgeon removed the plate from Mr. Leflar's leg and shaved the bone overgrowth.[38]

Mr. Leflar claims Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide him necessary medical treatment while incarcerated. Mr. Leflar brings this claim under Section 1983.[39] Montgomery County, Montgomery Facility and prison officials Davis, Jones, Riley, Apple, and Major Carbo move to dismiss.[40] Montgomery County and Montgomery Facility argue Mr. Leflar's cannot seek

---

[37] ECF Doc. No. 42, ¶ 94.

[38] *Id.*

[39] 42 U.S.C. § 1983.

[40] In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires we apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

punitive damages against a municipality under Section 1983. Prison officials Davis, Jones, Riley, Apple, and Major Carbo argue Mr. Leflar fails to allege facts of their personal involvement in this case.

### A. Mr. Leflar fails to allege facts of personal involvement of Major Carbo and Lt. Apple.

The Eighth Amendment prohibits cruel and unusual unpunishment. In the prison context, the Eighth Amendment requires prison officials provide inmates with adequate medical care.[41] "An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met."[42] "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."[43] "This is true whether the indifference is manifested by prison doctors in their response to prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."[44] "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [Section] 1983."[45]

To state a claim for inadequate medical treatment under the Eighth Amendment, Mr. Leflar must allege (1) the prison official acted deliberately indifferent to his medical needs and

---

[41] *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

[42] *Id.*

[43] *Id.* (internal citation omitted).

[44] *Id.* (footnote omitted).

[45] *Id.*

7

(2) the his medical needs were serious.[46] Mr. Leflar must plead specific facts demonstrating each individual defendant had personal involvement in the alleged wrongs.[47] Our court of appeals in *Rouse v. Plantier*[48] explained a prison official acts with deliberate indifference when the official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; [] (3) prevents a prisoner from receiving needed or recommended medical treatment[;]" or (4) "persists in a particular course of treatment in the face of resultant pain and risk of permanent injury."[49]

Non-medical prison officials may not be found deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."[50] A prison official "will generally be justified in believing that the prisoner is in capable hands" if the prisoner is "under the care of medical experts."[51] "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."[52]

---

[46] *Kuokos v. Chester Cnty.*, No. 16-4602, 2017 WL 511634, at *4 (E.D. Pa. Feb. 7, 2017) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

[47] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[48] 182 F.3d 192 (3d Cir. 1999).

[49] *Id.* at 197 (internal citations omitted).

[50] *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

[51] *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

[52] *Id.* at 237.

To the extent Mr. Leflar seeks to hold supervisory officials liable, such officials cannot be held liable for the wrongs of others, as is the case under the doctrine of *respondeat superior*.[53] In other words, a supervisory official's liability cannot be based merely on an employer-employee relationship.[54] Rather, to hold a supervisor liable under Section 1983, Mr. Leflar must allege facts showing the supervisor: (a) directly participated in violating his rights; (b) directed others to violate his rights; or (c) knew of and acquiesced in his subordinates' violations of his rights.[55]

In *Koukos v. Chester Cnty.*, the plaintiff verbally complained to correctional officers he did not receive necessary medical treatment regarding his opiate withdrawal.[56] The plaintiff displayed evident physical symptoms.[57] The plaintiff had not yet received treatment from a medical doctor at the prison when he made the complaints. The correctional officers ignored the plaintiff's request for medical treatment.[58] The plaintiff filed medical request slips and experienced physical and mental pain resulting from his lack of medical treatment.[59] The court found the plaintiff alleged sufficient facts the correctional officers had reason to believe prison

---

[53] *Miller v. Hoffman*, No. 97–7987, 1998 WL 404034, at *3 (E.D. Pa. July 7, 1998) (citing *Rode*, 845 F.2d at 1207).

[54] *Santiago*, 629 F.3d at 128.

[55] *Id.* at 129.

[56] *Kuokos*, 2017 WL 511634, at *6.

[57] *Id.* at *2-3

[58] *Id.*

[59] *Id.* at *2-3.

9

medical personnel mistreated or did not treat the prisoner.[60] The court concluded, "Whether the officers had sufficient knowledge to render them deliberately indifferent is a determination that should be made when the record is more complete with respect to what [the plaintiff] said to each officer, what was written on the medical request slips, what process correctional officers are supposed to follow with respect to those medical request slips and, most significantly, when and whether [the plaintiff] was seen and treated by medical staff during the relevant timeframe."[61]

Mr. Leflar alleged sufficient facts of personal involvement from Officers Davis and Jones and Lt. Riley because they allegedly ignored his requests for medical treatment. Mr. Leflar told Officers Davis and Jones and Lt. Riley he experienced pain in his injured leg. Mr. Leflar told Officer Davis and Lt. Riley he did not receive necessary medical treatment. Mr. Leflar also submitted numerous sick call slips before he verbally complained to the officials. At the time Mr. Leflar made these complaints, he walked with the assistance of crutches. Mr. Leflar's *pro se* allegations conflict as to when he visited with Dr. Carrillo. Similar to the court analysis in *Koukus*, we must determine, after discovery, when Mr. Leflar received treatment from Dr. Carrillo in relation to his complaints to the prison officials. Discovery will also allow us to identify what Mr. Leflar told the prison officials, how evident Mr. Leflar's symptoms were to the prison officials, what Mr. Leflar wrote in the sick call slips, and what involvement, if any, Officers Davis and Jones and Lt. Riley had in not responding to Mr. Leflar's numerous sick call slips.

Regardless of what discovery may show, viewing the facts in light most favorable to Mr. Leflar, Mr. Leflar alleged sufficient facts Officers Jones and Davis and Lt. Riley had reason to

---

[60] *Id.* at *6.

[61] *Id.*

10

believe Montgomery Facility medical personnel either did not treat Mr. Leflar or mistreated Mr. Leflar and the officials failed to act. Mr. Leflar sufficiently alleges personal involvement because he may establish these failures to act constituted deliberate indifference.

By contrast, Mr. Leflar fails to allege sufficient facts of personal involvement and deliberate indifference from Major Carbo. Mr. Leflar merely alleges he acted as "an employee of the [Montgomery Facility] and/or Montgomery County, and was warden of the [Montgomery Facility] with supervisory and administrative responsibilities."[62] Apart from being employed at the Montgomery Facility, Mr. Leflar does not allege facts identifying Major Carbo's involvement in this case. The allegation Major Carbo acted in a supervisor position is insufficient to survive dismissal. Mr. Leflar does not allege Major Carbo participated in the violation of his rights, directed others to violate his rights, or acquiesced in the violation of his rights. Mr. Leflar fails to state a claim against Major Carbo.

Mr. Leflar also fails to allege sufficient facts of personal involvement and deliberate indifference from Lt. Apple. After careful review of Mr. Leflar's Second Amended Complaint, all we know is Lt. Apple "was a correctional officer and employee of the [Montgomery Facility] and/or Montgomery County."[63] Even viewing this fact in light most favorable to Mr. Leflar, this fact is insufficient to state a claim against Lt. Apple. Without facts of Lt. Apple's conduct in relation to this case, we cannot allow Mr. Leflar's claim against Lt. Apple proceed into discovery.

---

[62] ECF Doc. No. 42, ¶ 10.

[63] ECF Doc. No. 42, ¶ 13.

### B. Mr. Leflar may not seek punitive damages against Montgomery County or Montgomery Facility under Section 1983.

Mr. Leflar seeks relief in the form of punitive damages against Montgomery County and Montgomery Facility. Montgomery County and Montgomery Facility argue Mr. Leflar may not seek punitive damages against a municipality under Section 1983. In *City of Newport v. Fact Concerts, Inc.*,[64] the United States Supreme Court found a municipality is immune from punitive damages under Section 1983.[65] This immunity applies to a municipality and its entities.[66] Both Montgomery County and Montgomery Facility enjoy immunity from punitive damages under Section 1983.

We grant in part and deny in part the moving Defendants' motion to dismiss. Mr. Leflar's allegations Officers Davis and Jones and Lt. Riley ignored his requests for medical treatment despite having reason to believe Mr. Leflar did not receive adequate medical treatment is sufficient to establish personal involvement from these three defendants. Mr. Leflar's bald allegation of Major Carbo's and Lt. Apple's employment at Montgomery Facility are insufficient to state a claim against them. Mr. Leflar also cannot not seek punitive damages against Montgomery County and Montgomery facility. We will allow Mr. Leflar, through his counsel, one last leave to amend to identify the proper defendants, serve additional defendants and proceed towards trial.

KEARNEY, J.

---

[64] 453 U.S. 247 (1981).

[65] *Id.* at 271.

[66] *Debellis v. Kulp*, 166 F. Supp. 2d 255, 281 (E.D. Pa. 2001) (citing *City of Newport*, 453 U.S. 247 (1981)).